**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| CAROL L. THOMPSON, | |
| Plaintiff, | Civil Action No. 2:20-cv-587 |
| v. | |
| LOANCARE, LLC, | |
| Defendant. | |

## COMPLAINT

COMES NOW Plaintiff, Carol L. Thompson ("Plaintiff"), by counsel, and files this Complaint against LoanCare, LLC ("LoanCare"). Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1.      This case demonstrates that, as the entities that perform the day-to-day management of loans, "servicers can have a direct and profound impact on borrowers."[1] Here, Plaintiff fully and timely paid her mortgage each month, and yet, the servicer of her home loan referred her home to foreclosure and assessed late charges, excess interest, and default-related fees to her account.

2.      It appears that LoanCare's multitude of errors stems from a mistake in the record of the prior servicer of Plaintiff's account. This initial mistake was compounded by LoanCare's own errors and noncompliance with federal law. To be clear, at all times Plaintiff has either made her monthly mortgage payments or has been ready and willing to make her monthly mortgage payment. Nonetheless, LoanCare refuses to correct the errors in her account.

---

[1] *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10699 (Feb. 14, 2013) (codified at 12 C.F.R. pt 1024).

3.     Plaintiff, who is on active-duty military status, informed the prior servicer of her home loan of her new address in Japan where she is permanently stationed.

4.     Yet, when the prior servicer transferred the servicing of the loan to LoanCare, both the prior servicer and LoanCare sent the notice of transfer to her former address in San Diego, California. Plaintiff never received notice of the transfer and continued to make payments (which were accepted) each month to the prior servicer of her home loan.

5.     A homeowner should not have to file a lawsuit in order to correct servicer errors. Indeed, Congress enacted the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, in part, to protect consumers from the type of abusive and inaccurate servicing practices used by the servicers of Plaintiff's home loan. Consistent with its consumer protection purposes, RESPA imposes mandatory duties on mortgage servicers, including specific requirements related to the transfer of servicing of the loans and the correction of errors. 12 U.S.C. § 2605.

6.     Plaintiff alleges claims against LoanCare for its numerous violations related to its duties under RESPA, 12 U.S.C. § 2605. RESPA provides for actual damages, statutory damages, costs, and attorney's fees for violations of certain mortgage servicer duties. The imposition of civil liability on servicers for the damage caused by their violations of the requirements of RESPA is essential to achieve the consumer protection purposes of RESPA because home mortgage servicers are incentivized "to look for opportunities to impose fees on borrowers to enhance revenues."[2] Indeed, this case exemplifies the type of far reaching consequences noncompliance with RESPA can have on a homeowner. Here, LoanCare has profited from assessing late fees and corporate

---

[2] *Id.*

advances on Plaintiff's account, while reporting derogatory and inaccurate information concerning her to the credit bureaus.

7.      Additionally, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, provides additional protections to consumers that are designed to protect the furnishing of derogatory, erroneous information by their mortgage servicer by imposing further investigative duties on servicers after the homeowner disputes the inaccuracy with the credit bureaus. 15 U.S.C. § 1681s-2(b)(1).

8.      Accordingly, Plaintiff also alleges FCRA claims for LoanCare's failure: to fully and properly investigate her disputes, to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, and to appropriately mark her account as disputed.

9.      Because of LoanCare's multiple violations of RESPA and the FCRA, Plaintiff is entitled to her actual, statutory, and punitive damages; costs; and attorney's fees.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 12 U.S.C. § 2605(f), and 15 U.S.C. § 1681(p).

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

12.     Plaintiff Carol L. Thompson is a natural person. She is a consumer as defined by 15 U.S.C. § 1681a(c).

13.     LoanCare is a mortgage servicing company with a principal place of business in Virginia Beach, Virginia. At all times relevant to this Complaint, LoanCare was a mortgage loan servicing company governed by RESPA and a furnisher governed by the FCRA.

## FACTS

### *Plaintiff's Home Mortgage and the Transfer of Servicing*
### *from Ditech to LoanCare*

14.     This case concerns Plaintiff's federally related mortgage on her home in Virginia Beach.

15.     Plaintiff obtained the mortgage in 2007, and intended it to be her primary residence.

16.     Plaintiff is currently on active military status and is stationed in Honshu Yokosuka, Japan.

17.     Plaintiff's friend currently lives in the Virginia Beach home, but Plaintiff intends to return to her home in Virginia Beach once her military service is completed.

18.     From the time Plaintiff took out the loan on her home in July 2007, she has fully and timely made her mortgage payment each month.

19.     From around April 2013 through May 2019, Plaintiff's home mortgage was serviced by Ditech Financial, LLC.

20.     Ditech, formerly known as Green Tree Servicing, is a notorious mortgage servicer, known for widespread, illegal loan servicing and debt collection practices that have harmed borrowers.[3] For example, in 2015, Green Tree entered into a settlement agreement with the FTC and the Bureau, agreeing to pay $63 million to resolve charges "that it harmed homeowners with illegal loan servicing and debt collection practices." *Id*.

21.     Among other things, the allegations in the 2015 regulatory action alleged that "Green Tree misrepresented the amounts consumers owed or the terms of their loans," including

---

[3] Press Release, Federal Trade Commission, National Mortgage Servicing Company Will Pay $63 Million to Settle FTC, CFPB Charges (Apr. 21, 2015), *available at* https://www.ftc.gov/news-events/press-releases/2015/04/national-mortgage-servicing-company-will-pay-63-million-settle.

"telling consumers they owed fees they did not owe, or that they had to make higher monthly payments than their mortgage contracts require." *Id.*

22.     "Green Tree also allegedly furnished consumers' credit information to consumer reporting agencies when it knew, or had reasonable cause to believe, that the information was inaccurate, and failed to correct the information after determining that it was incomplete or inaccurate – often when consumers told Green Tree about it." *Id.*

23.     Then, in February 2019, Ditech filed for bankruptcy. *See* https://www.housingwire.com/articles/48148-ditech-files-for-chapter-11-bankruptcy-for-second-time-in-14-months/ (last visited November 10, 2020).

24.     Plaintiff paid her monthly mortgage statement to Ditech using the Department of Defense Payment System. Thus, each month, her mortgage payment was automatically deducted from her monthly paycheck and paid to Ditech by the Department of Defense.

25.     In early 2019, Plaintiff was temporarily stationed in San Diego, California.

26.     On or around April 2019 and prior to moving to her permanent duty station in Honshu Yokosuka, Plaintiff informed Ditech of her address change from San Diego, California to Honshu Yokosuka, Japan.

27.     Effective June 1, 2019, Ditech transferred the servicing of Plaintiff's home mortgage to LoanCare.

28.     Plaintiff never received a notice of the transfer from either Ditech or LoanCare.

29.     Ditech continued to accept Plaintiff's monthly mortgage payment each month from June 2019 to January 2020.

30.     Undoubtedly, LoanCare is familiar with Ditech's abusive and illegal servicing practices, and it is aware that when it takes over servicing of a Ditech account, that there are likely to be errors in the information provided to it by Ditech.

31.     Plaintiff had no idea that LoanCare might be the servicer of her mortgage as she had received no notice of the transfer from either Ditech or LoanCare and because her monthly payments were being accepted each month.

32.     The transfer of servicing should not have affected the correct crediting of Plaintiff's payments during the first 60 days after the transfer because RESPA requires the transferor servicer to collect payments made to it and to transfer such payments to the new servicer for proper crediting.

33.     However, it appears that Ditech and LoanCare have not established a procedure for transferring and crediting of such payments to comply with its RESPA obligations.

34.     LoanCare knew or should have known that Plaintiff, who had a perfect record of making her mortgage payment each month, did not receive proper notice of the transfer.

35.     Had LoanCare established a proper procedure of transferring and crediting payments made to Ditech, as required by RESPA, LoanCare would have known that Plaintiff continued to make payments to Ditech, including during the 60-day period following the transfer of her loan.

36.     Because RESPA requires LoanCare to properly credit payments made to the prior servicer during the 60-day transfer period, LoanCare should have contacted Ditech about Plaintiff's missed payments.

37.     Instead, LoanCare referred Plaintiff's home for foreclosure in November 2019 and began profiting off of default related fees and expenses it assessed to her account.

***Plaintiff Discovers the***
***Transfer of Servicing of her Mortgage***

38.    In November 2019, Plaintiff discovered that LoanCare was reporting derogatory information about her to the credit reporting agencies.

39.    Plaintiff immediately contacted LoanCare to determine why it was reporting negative information regarding her.

40.    Plaintiff was shocked to learn that her mortgage account had been transferred from Ditech to LoanCare and that her payments were not being paid to the proper servicer despite never receiving notice of the transfer and Ditech accepting the payments each month.

41.    In the call with the LoanCare representative, Plaintiff provided her address in Japan and requested that verification of LoanCare as the servicer of her loan be sent to her. She explained that she had been continuing to pay Ditech her monthly mortgage payment. She also requested her monthly billing statement and instructions for making payments.

42.    LoanCare refused to provide Plaintiff with any verification that it was the servicer of her mortgage account, and despite Plaintiff's request, LoanCare did not send Plaintiff a billing statement.

43.    Instead, LoanCare referred Plaintiff's loan for foreclosure, despite the fact that it knew she was on active duty and she had indicated she had been paying each month to her prior servicer.

44.    Plaintiff continued to make payments to Ditech through January 2020 as she did not have a billing statement or other instructions for the payment of her monthly mortgage statement. This was very distressing to Plaintiff as she faced foreclosure of her home, and she wanted to continue to make her monthly mortgage statement until it had been established that LoanCare really was the servicer of her home loan.

45.     Additionally, Plaintiff's employment with the military was threatened because of the negative reporting on her credit report. It was extremely important to Plaintiff to resolve the errors on her credit report as quickly as possible because of the threat to her employment. Plaintiff suffered extreme distress, including stress, because of the inaccurate information in her credit reports.

***Plaintiff's Notices of Error
and Requests for Information***

46.     In addition to calling LoanCare in November 2019 when she first learned that LoanCare was reporting negatively on her credit report, Plaintiff sent LoanCare multiple letters in an attempt to correct the errors in her mortgage account.

47.     In a notarized letter dated February 6, 2020, Plaintiff informed LoanCare that she had still not received copies of the notice of the transfer or any billing statement from LoanCare despite her November 2019 phone call to LoanCare in which she provided her address in Japan and email address and requested such information.

48.     As of April 2020, Plaintiff had still not received any correspondence from LoanCare.

49.     In a letter dated April 23, 2020, Plaintiff provided LoanCare with notice of errors in her account and requests for information.

50.     LoanCare received the letter on May 21, 2020.

51.     In her April 23, 2020 letter, Plaintiff requested that LoanCare confirm that she had timely made her June 2019 through January 2020 payments to Ditech; to update her credit report to reflect her timely payments; and to remove all default related charges, late fees, and excess interest that had been incorrectly applied to her account.

52.    Plaintiff also requested that LoanCare provide her with any servicing transfers or monthly billing statements that LoanCare had attempted to send to her and to provide the address where such notices and statements were sent.

53.    Plaintiff also asked for instructions for how to make payments to LoanCare.

54.    Additionally, Plaintiff requested the following information: documentation related to the loan transfer; documentation of all communications between Ditech and LoanCare regarding the investigation of her payments; the date that her home was referred to foreclosure by LoanCare; all of the servicing notes from her loan file; a recording of the November 2019 call between Plaintiff and the LoanCare representative; and invoices related to any default related fees assessed to her account.

55.    LoanCare failed to take any action with respect to Plaintiff's April 23, 2019 letter within 30 days of its receipts on May 21, 2020.

56.    After the 30-day period had already passed, LoanCare sent Plaintiff a letter dated June 30, 2020 stating that it needed an additional 15 days for "[f]urther review of correspondence received."

57.    However, LoanCare did not take action as promised, instead sending a second letter dated July 15, 2020 stating that it needed an additional 15 days for "[f]urther review of correspondence received."

58.    Plaintiff sent another letter to LoanCare dated July 20, 2020.

59.    LoanCare received the letter on August 11, 2020.

60.    In her July 2020 letter, Plaintiff again explained the errors on her account, requested that LoanCare correct her account and refund any late fees or default related fees, and also

requested that LoanCare provide her with copies of the notice of transfer and her monthly mortgage statements that she never received.

61.    Plaintiff renewed her requests for information regarding the transfer of her loan, the date her home was referred for foreclosure, the servicing notes for her file, the communications between Ditech and LoanCare, the recording of the November 2019 call, and invoices for any default related fees that were assessed to her account.

62.    LoanCare never attempted to contact Plaintiff for further information as a part of any investigation into the errors on her account.

63.    Plaintiff received a letter from LoanCare dated September 8, 2020.

64.    Thus, on September 8, 2020, 10 months from the time she made initial contact with LoanCare requesting assistance, Plaintiff finally received a letter from LoanCare partially addressing her concerns.

65.    The letter indicated that LoanCare confirmed that Ditech had received all of Plaintiff's payments and attempted to return them to her at a Honolulu address. The letter also indicated that Ditech had forwarded funds in the amount of $9,450 to LoanCare.

66.    The letter did not provide any of the information requested in Plaintiff's prior letters.

67.    Plaintiff sent a letter dated September 16, 2020 renewing her notices of errors and requests for information.

68.    Additionally, Plaintiff sent LoanCare a cashier's check for $10,800 to cover her payments from February 2020 through September 2020. In the letter, she asked LoanCare to confirm that this would bring her current on her account, and if LoanCare refused to bring her account current with the payment, to state all facts to support its position.

69.    Plaintiff again asked for instructions to make electronic payments, the removal of late fees and default related charges from her account, and for copies of all invoices of any default related fees.

70.    In a letter dated October 6, 2020, LoanCare returned the check to Plaintiff, indicating that additional funds were required to cover the late charges, property inspections, attorney's fees, and other default related fees on her account.

71.    Plaintiff received a letter dated October 7, 2020, which appears to be a response to her several notices of errors and requests for information.

72.    The letter informed her that LoanCare had been the servicer of her account since June 1, 2019 and had been directing all correspondence to her outdated address in San Diego, California. The letter included copies of the notice of transfer sent to the San Diego address but did not mention the requested monthly statements Plaintiff asked for.

73.    LoanCare provided that it had referred her home for foreclosure in November 2019.

74.    LoanCare also stated that it did not send her monthly mortgage statements to her address in Japan despite her requests in November 2019 and February 2020 because she had only spoken with a LoanCare representative and had not provided a written request to update the mailing address. However, LoanCare did not explain why the LoanCare representative in the November 2019 call did not specify that a written address change was required. Also, LoanCare did not explain why it did not immediately begin sending her monthly statements upon receipt of her February 2020 and April 2020 letters.

75.    LoanCare provided information regarding the payments that were accepted by Ditech and indicated that it was working with Ditech to recover the funds and apply them to Plaintiff's account.

76.     LoanCare also indicated that it would waive only $195.48 in late fees, but it did not explain the total amount of late fees that it continued to assess, excess interest, and default related fees that had been assessed to the account due to the errors of Ditech and LoanCare.

77.     LoanCare attached an account history for 10/7/2019 through 10/07/2020, but it did not explain why it did not include the account history for 6/1/2019 through 10/6/2019. There was no explanation for why a complete account history was not available.

78.     This partial account history suggests that significant late fees and default related fees have been assessed to Plaintiff's mortgage account because her mortgage account was erroneously considered as in default.

79.     However, it is unclear from the information provided what amount was charged for any of the default related fees and expenses.

80.     LoanCare did not provide the amount of default related fees charged to Plaintiff's account, failed to provide the invoices requested by Plaintiff, and provided no reason for the absence of the requested information.

81.     Additionally, LoanCare never provided Plaintiff with the recording of her call with the LoanCare representative in November 2019, and LoanCare provided no reason for the absence of the information.

82.     The letter concluded that "no error" on LoanCare's part was identified in the investigation.

83.     The letter did not provide Plaintiff with a specific representative and phone number for that representative, instead directing her to LoanCare's "Office of the Customer."

### *Inaccurate Reporting on Plaintiff's Credit Reports*

84.     Plaintiff's LoanCare account was also reported as past due and in foreclosure on her credit reports.

85.     In April 2020 and July 2020, Plaintiff disputed the LoanCare account with the three major credit reporting agencies—Trans Union, Equifax, and Experian.

86.     Plaintiff attached proof that she paid each disputed payment to her April 2020 disputes.

87.     Upon information and belief, the consumer reporting agencies forwarded Plaintiff's disputes to LoanCare.

88.     Despite the Plaintiff's disputes and the supporting information attached to the disputes, LoanCare refused to remove the inaccurate, derogatory information from Plaintiff's credit reports.

89.     LoanCare continued to furnish the inaccurate, derogatory information to the credit bureaus.

90.     Upon information and belief, LoanCare conducted no investigation into Plaintiff's disputes and confirmed the erroneous reporting without contacting Ditech or Plaintiff for further information.

91.     LoanCare continued to report the disputed information during the 60-day time period after it received Plaintiff's April 2020 letter including notices of error and requests for information.

## **COUNT ONE:**
### **Violation of RESPA, 12 U.S.C. § 2605(b)**

92.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

93.     LoanCare failed to provide Plaintiff with notice of the transfer of the servicing of her loan within 15 days after the effective date of transfer of the servicing of her loan from Ditech to LoanCare.

94.     Upon information and belief, LoanCare's noncompliance with 12 U.S.C. § 2605(b) is a part of a pattern or practice of noncompliance with 12 U.S.C. § 2605(b).

95.     As a result of LoanCare's conduct, Plaintiff suffered concrete and particularized harm, including: the referral of her home to foreclosure, the incurring of unnecessary fees and interest on her mortgage account, default related assessments on her mortgage account, derogatory credit reporting, and emotional distress, including aggravation and stress from her home and employment being placed in jeopardy by LoanCare's conduct.

96.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from LoanCare for its violation of 12 U.S.C.§ 2605(b) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

## COUNT TWO:
### Violation of RESPA, 12 U.S.C. § 2605(d)

97.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

98.     LoanCare violated 12 U.S.C. § 2605(d) by assessing late charges on Plaintiff and for treating her payments as late when Plaintiff made those payments to Ditech during the 60-day period following transfer of her loan.

99.     Because Plaintiff timely made her payment to Ditech, it was a violation for LoanCare to treat her June 2019 and July 2019 payments as late.

100.    Upon information and belief, and based in part on LoanCare's repeated violations and conduct as to Plaintiff, LoanCare's noncompliance with 12 U.S.C. § 2605(d) is a part of a pattern or practice of noncompliance with 12 U.S.C. § 2605(d).

101.    Upon information and belief, it is Ditech and LoanCare's standard practice not to properly transfer and credit payments made in the 60 days following transfer of the servicing of the loan as required by RESPA.

102.    As a result of LoanCare's conduct, Plaintiff suffered concrete and particularized harm, including: the incurring of unnecessary fees and interest on her mortgage account, default related assessments on her mortgage account, the referral of her home to foreclosure, derogatory credit reporting, and emotional distress, including aggravation and stress.

103.    Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from LoanCare for each of its violations of 12 U.S.C.§ 2605(d) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

### COUNT THREE:
### Violation of RESPA, 12 U.S.C. § 2605(k)(1)(C)

104.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

105.    Plaintiff contacted LoanCare on numerous occasions, including in November 2019 and February 2020, and informed LoanCare's failure to provide standard servicer duties.

106.    These errors included LoanCare's failure to send her monthly mortgage statements, to correctly allocate payments to her account that had been made to Ditech, to verify that it was the servicer of her account, and to investigate the errors in her account.

107.    LoanCare failed to take timely action to correct the errors in Plaintiff's account.

108. As a result of LoanCare's conduct, Plaintiff suffered concrete and particularized harm, including: the referral of her home to foreclosure, the incurring of unnecessary fees and interest on her mortgage account, default related assessments on her mortgage account, derogatory credit reporting, and emotional distress, including aggravation and stress from her home and employment being placed in jeopardy by LoanCare's conduct.

109. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from LoanCare for each of its violations of 12 U.S.C.§ 2605(k) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

## COUNT FOUR:
### Violation of RESPA, 12 U.S.C. § 2605(e)(2)

110. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

111. As alleged, Plaintiff submitted several qualified written requests to LoanCare, and LoanCare received each request.

112. LoanCare violated 12 U.S.C. § 2605(e)(2) on multiple occasions. Without limitation, Plaintiff lists several examples of LoanCare's violations of 12 U.S.C. § 2605(e)(2) below.

113. For example, LoanCare violated 12 U.S.C. § 2605(e)(2) by failing to take any action with respect to her April 23, 2020 letter within the 30-day time period allowed by RESPA.

114. LoanCare violated 12 U.S.C. § 2605(e)(2) by taking more than a 15-day extension of the 30-day time period and for improperly taking the 15-day extension after the 30-day time period had already passed.

115.    LoanCare also violated 12 U.S.C. § 2605(e)(2) by failing to make appropriate corrections to her account, including the crediting of all late fees, excess interest, and default related fees to her account.

116.    LoanCare further violated 12 U.S.C. § 2605(e)(2) by failing to provide Plaintiff with most of the information she requested or an explanation of why the requested information was unavailable.

117.    Plaintiff requested copies of all invoices from LoanCare related to any default related fees. LoanCare did not provide these invoices or even mention why that information might not be available.

118.    Plaintiff requested the recording from her call with the LoanCare representative in November 2019; this request was also ignored.

119.    LoanCare also ignored Plaintiff's request for LoanCare's communications with Ditech and the servicing notes from her file.

120.    LoanCare also requested that it send her copies of the monthly mortgage statements that she never received. LoanCare did not send her any mortgage statements and did not provide a reason for why such basic information would not be available.

121.    LoanCare did provide a partial account history, but it excluded all entries from June 2019 to October 2019 without explanation for the omission.

122.    As a result of LoanCare's conduct, Plaintiff suffered concrete and particularized harm, including: the referral of her home to foreclosure, the incurring of unnecessary fees and interest on her mortgage account, default related assessments on her mortgage account, derogatory credit reporting, and emotional distress, including aggravation and stress from her home and employment being placed in jeopardy by LoanCare's conduct.

123.   Upon information and belief and based on LoanCare's repeated violations, LoanCare's noncompliance with 12 U.S.C. § 2605(e)(2) is a part of a pattern or practice of noncompliance with 12 U.S.C. § 2605(e).

124.   Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from LoanCare for each of its violations of 12 U.S.C.§ 2605(e)(2) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

**<u>COUNT FIVE:</u>**
**Violation of RESPA, 12 U.S.C. § 2605(e)(3)**

125.   Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

126.   LoanCare violated 12 U.S.C. § 2605(e)(3) by continuing to provide derogatory information regarding the overdue payments during the 60-day period after LoanCare received Plaintiff's April 23, 2020 letter.

127.   Because of LoanCare's conduct, Plaintiff suffered concrete and particularized harm, including the reduction of her credit score and emotional distress, including stress and aggravation by her employment being placed in jeopardy.

128.   Upon information and belief and based in part on LoanCare's conduct as to Plaintiff, LoanCare's noncompliance with 12 U.S.C. § 2605(e)(3) is a part of a pattern or practice of noncompliance with 12 U.S.C. § 2605(e).

129.   Upon information and belief, LoanCare does not have a procedure in place to freeze negative payment information when it receives a notice of error challenging the validity of the payment information.

130.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from LoanCare for its violations of 12 U.S.C. § 2605(e)(3) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

**COUNT SIX:**
**Violation of FCRA, 15 U.S.C. §1681s-2(b)(1)(A)**

131.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

132.     On one or more occasion within the past two years, by example only and without limitation, LoanCare violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute.

133.     When Plaintiff disputed her account with the credit bureaus, LoanCare used a dispute system named "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher customers (such as LoanCare). E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

134.     When a consumer reporting agency receives a consumer dispute, it (usually via an outsourced vendor) translates each dispute into an automated consumer dispute verification ("ACDV") form.

135.     Upon information and belief, the ACDV form is the method by which LoanCare has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

136.     Upon information and belief, Experian, Equifax, and Trans Union each forwarded Plaintiff's dispute via an ACDV to LoanCare.

137.     LoanCare understood the nature of Plaintiff's disputes when it received the ACDV forms.

138.    Upon information and belief, when LoanCare received the ACDV form containing Plaintiff's dispute, LoanCare followed a standard and systematically unlawful process where LoanCare only reviews its own internal computer screen for the account and repeats back the same information to the ACDV system that was previously reported to the credit reporting agency.

139.    Upon information and belief, when LoanCare receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

140.    As a result of LoanCare's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered concrete and particularized harm, including loss of credit, damage to reputation, embarrassment, humiliation, stress, and other emotional distress.

141.    LoanCare's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, LoanCare was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

142.    Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from LoanCare in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT SEVEN:
### Violation of FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)

143.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

144.    On one or more occasion within the past two years, by example only and without limitation, LoanCare violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

145.    As Plaintiff detailed in the previous Count, LoanCare has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies, including for Experian, Equifax, and Trans Union.

146.    LoanCare is aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

147.    LoanCare does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

148.    LoanCare understood Plaintiff's disputes and that Plaintiff claimed the information was inaccurate.

149.    As a result of LoanCare's violations of 15 U.S.C. § 1681-2(b)(1)(B), Plaintiff suffered concrete and particularized harm, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

150.    LoanCare's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

151.    Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from LoanCare in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**<u>COUNT EIGHT:</u>**
**Violation of FCRA, 15 U.S.C. § 1681s-2(b)(1)(C) and (D)**

152.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

153.    On one or more occasion within the past two years, by example and without limitation, LoanCare violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing its

representations within Plaintiff's credit files without also including a notation that his account was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

154.    Specifically, LoanCare failed to add the "XB" or "XC" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to the credit reporting agencies, which would have indicated that the account was disputed.

155.    Upon information and belief, Plaintiff alleges that LoanCare rarely, if ever, added the XB or XC code or other notation that an account was disputed when it responded to ACDV forms.

156.    Furthermore, LoanCare knew that Plaintiff disputed the subject account through her dispute letters to the credit reporting agencies.

157.    Plaintiff's disputes were bona fide as Plaintiff's account was not past due because she timely made all payments for her mortgage.

158.    As a result of LoanCare's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), Plaintiff suffered concrete and particularized harm, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

159.    LoanCare's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, LoanCare was negligent, entitling Plaintiff to recovery against LoanCare under 15 U.S.C. § 1681o.

160.    Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from LoanCare in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against LoanCare; her attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**CAROL L. THOMPSON**

By:    */s/ Casey S. Nash*
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
*Counsel for Plaintiff*